```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>         v.<br><br>JOSEPH McCLOSKEY-DIAZ, *et al.*,<br><br>**Defendants**. | **CRIMINAL NO.** 09-364 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

On October 30, 2009, Joseph McCloskey-Diaz ("McCloskey"), along with several other defendants, was indicted on thirty-three counts of making false statements to a financial institution, bank fraud, conspiracy, monetary laundering, aiding and abetting, and forfeiture allegations. (Docket No. 3.)

**PROCEDURAL HISTORY**

On July 2, 2010, McCloskey filed a motion to dismiss the indictment for lack of jurisdiction and for failure to state an offense. (Docket No. 417.) Defendants Angel L. Millan-Garcia, Nahir Dominicci-Chardon, Jesus Suarez-Colon, Harold Mestey-Villamil, Lorny Seda-Rodriguez, and Yhanira Alberti-Martinez (together, "defendants") joined McCloskey's motion. (Docket Nos. 418, 423, 429, 431, 433, & 440.) The Court granted

Criminal No. 09-364 (FAB)                                                    2

defendants' motion for joinder on July 13, 2011.  (Docket No. 442.) On July 20, 2011, the government filed its opposition to defendants' motion.  (Docket No. 454-1.)  On July 24, 2011, McCloskey filed a reply.  (Docket No. 468.)  For the reasons described below, the Court **DENIES** defendants' motion to dismiss.

## DISCUSSION

### I.   Standard Governing Motion to Dismiss an Indictment

When considering whether to dismiss a count of an indictment, a court "must accept the allegations in the indictment as true." See United States v. Young, 694 F.Supp.2d 25, 27 (D.Me. 2010) (citing Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n. 16 (1952)).  The Court must consider whether the allegations in the indictment are sufficient to inform a jury as to the charged offense.  See United States v. Sampson, 371 U.S. 75, 76 (1962); United States v. Barker Steel Co., Inc., 985 F.2d 1123, 1125 (1st Cir. 1993).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974) (internal citations omitted). A court "read[s] an information as a whole" and "construe[s] the allegations in a

practical sense, with all necessary implications." Barker, 985 F.2d at 1125 (internal citations omitted).

## II. Lack of Jurisdiction

Defendants seek dismissal of various counts in the indictment for lack of jurisdiction. Defendants maintain that they cannot be tried for violations under 18 U.S.C. §§ 1344 and 1014, which govern bank fraud and making false statements to a financial institution, respectively, because the entities that provided financing in this case are not federally insured financial institutions.[1] The government submits that the federally insured institutions contained in the indictment, specifically First Bank, Santander Bank (BSPR), RG Premier Bank (RGPB), and Doral Bank, were indeed

---

[1] For the purposes of 18 U.S.C. §§ 1344 and 1014, the term "financial institution" is defined by 18 U.S.C. § 20, in relevant part, as:

"[A]n insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act)."

Section 20 was amended in May 2009 to include, among other changes, a subsection that reads:

"[A] mortgage lending business (as defined in section 27 of this title) or any person or entity that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974."

The parties do not dispute that the conduct alleged took place prior to May 2009; thus, the amendment does not apply.

Criminal No. 09-364 (FAB)                                                    4

victimized by defendants' actions, even though the alleged transactions occurred through the involvement of several mortgage companies that were, admittedly, not federally insured entities. The Court addresses the issue of jurisdiction as it applies to each lending entity and federally insured institution on a case by case basis.

    **A.   Golden Mortgage Bankers and First Bank**

Defendants allege that Golden Mortgage Bankers ("GMB"), an entity that is not a financial institution under 18 U.S.C. § 20, was the lending institution that financed the loans at issue in Counts 1, 4 and 8.  These loans were later sold by GMB to First Bank, an entity that is a covered financial institution.  (Docket No. 417 at 9-10.)  The government does not dispute the role that GMB played in the transactions, but alleges that (a) First Bank also played a vital role in forming the overall arrangement with defendants that resulted in GMB approving defendants' loans, and (b) GMB relied on First Bank's acceptance of an agreement to purchase certain loans before the closing date before making those loans to defendants.  (Docket No. 454-1 at 7, 11.)  Thus, according to the government, it was reasonably foreseeable to defendants that First Bank, a federally insured institution, would be a victim of the defrauding scheme, even though GMB acted as the mortgage broker

Criminal No. 09-364 (FAB)                                                    4

victimized by defendants' actions, even though the alleged transactions occurred through the involvement of several mortgage companies that were, admittedly, not federally insured entities. The Court addresses the issue of jurisdiction as it applies to each lending entity and federally insured institution on a case by case basis.

    **A.   Golden Mortgage Bankers and First Bank**

Defendants allege that Golden Mortgage Bankers ("GMB"), an entity that is not a financial institution under 18 U.S.C. § 20, was the lending institution that financed the loans at issue in Counts 1, 4 and 8.  These loans were later sold by GMB to First Bank, an entity that is a covered financial institution.  (Docket No. 417 at 9-10.)  The government does not dispute the role that GMB played in the transactions, but alleges that (a) First Bank also played a vital role in forming the overall arrangement with defendants that resulted in GMB approving defendants' loans, and (b) GMB relied on First Bank's acceptance of an agreement to purchase certain loans before the closing date before making those loans to defendants.  (Docket No. 454-1 at 7, 11.)  Thus, according to the government, it was reasonably foreseeable to defendants that First Bank, a federally insured institution, would be a victim of the defrauding scheme, even though GMB acted as the mortgage broker

in the transaction. (Docket No. 454-1 at 9.)  In support of its claims, the government provides evidence demonstrating the following:  (1) GMB had to obtain approval from First Bank before it approved the defendants' loans; (2) for at least one of the transactions, First Bank issued a "Commitment Letter" to GMB establishing conditions for the purchase of the loan prior to the closing date; (3) for at least one of the transactions, GMB issued defendant a "First Payment Letter" on the date scheduled for closing indicating that the loan had been transferred to First Bank; (4) for at least one of the transactions, First Bank issued defendant a Welcome Letter on the date scheduling for closing; and (5) defendants provided to GMB certain items that were required by First Bank in order for them to purchase the loan.  (Docket No. 454-1 at 5-11.)  Defendants do not dispute the authenticity of the evidence provided by the government.

The First Circuit Court of Appeals has explicitly stated that section 1344 applies "where the federally insured institution takes part in an integrated transaction and is thereby injured by the defendant, who intended to defraud another party to the transaction." United States v. Edelkind, 467 F.3d 791, 797-98 (1st Cir. 2006).  Moreover, the specific intent element of section 1344 requires the government to show that defendants intended "to

Criminal No. 09-364 (FAB)                                                    6

victimize a bank by means of a fraudulent scheme." United States v. Brandon, 17 F.3d 409, 426 (1st Cir. 1994). The Brandon court held that the government need not show that "the alleged scheme was directed *solely* toward a particular institution" nor that "a defendant knows which particular bank will be victimized by his fraud . . . ." Id. Instead, "it is sufficient to show that defendant knowingly executed a fraudulent scheme that exposed a federally insured bank to a risk of loss." Id. In this case, the government has provided sufficient evidence of a "factual nexus" for a jury to conclude that the allegedly fraudulent scheme directed at GMB operated in substance to defraud First Bank. Edelkind, 467 F.3d at 797. Thus, defendants' motion to dismiss counts related to GMB is **DENIED**.

    **B.**    **Santander Mortgage and Santander Bank**

    Defendants allege that Santander Mortgage (SM), which is not a federally insured institution but a wholly-owned subsidiary of Santander Bank (BSPR), issued the loans in counts 8 and 16. The government does not dispute that the majority of the loan documents were provided to defendants from SM, but argues that the factual nexus between SM and BSPR is tight enough to make a prima facie showing of jurisdiction and take the matter to a jury. (Docket No. 454-1 at 11-12.) Specifically, the government argues that the

Criminal No. 09-364 (FAB)                                                7

following facts demonstrate that it was reasonably foreseeable to defendants that any loss suffered by SM would also be suffered by BSPR: (1) both SM and BSPR use the same logo on their loan documents; (2) defendants received checks that were drawn from BSPR's account; (3) defendants were notified in their First Payment Letter that payments were to be made to BSPR, not SM; and (4) defendants received provisional payment coupons on behalf of BSPR. Id. at 24-26.  The First Circuit Court of Appeals has held that "a defendant can violate Section 1344 by submitting the dishonest loan application to an entity which is not itself a federally insured institution." United States v. Walsh, 75 F.3d 1, 9 (1996) (finding a sufficient nexus between the federally insured institution and the uninsured subsidiary, which issued the loans, where the subsidiary was wholly-owned by the parent; all of the subsidiary's directors and principal officers were officers of the parent; and the subsidiary was subject to examination by the same federal bank examiners as the parent and reported its result on a consolidated basis); see also Edelkind, 467 F.3d at 798 (finding a sufficient nexus where the parent's forms and guidelines were used by the uninsured subsidiary; an official of the parent corporation signed off on the loan before the uninsured institution made the loan; and the uninsured institution transferred the loan to the

parent about a month after the closing.)  The Court finds that the government has provided evidence of a sufficiently tight factual nexus between SM and BSPR at this stage of the proceedings to survive a motion to dismiss.  Thus, defendants' motion to dismiss counts related to SM is **DENIED.**

### C.  R&G Financial Corporation and RG Premier Bank, RG Mortgage

Defendants also seek dismissal of count 13, alleging that the loans were issued by an uninsured institution, RG Mortgage (RGM), and not by RG Premier Bank (RGPB), a federally insured institution.  The government claims that at times relevant to the indictment, both RGM and RGPB were subsidiaries of RG Financial Corporation (RGFC).  (Docket No. 454-1 at 26.)  As of April 2010, RGM became a wholly-owned subsidiary of RGPB.  Id.  The government submits that at the time the loans to defendants were made, (1) the offices of RGM were located in RGPB's building; (2) the checks used to pay the disbursements were issued by RGM as "escrow agents" of RGPB; (3) the funds derived from the payments came from RGPB; and (4) various documents, including the Good Faith Settlement Costs form, the property registration, and the promissory note, all indicate that RGPB is the lending institution for the loans.  (Docket No. 454-1 at 27-28.)  The Court finds that the factual

nexus between RGM and RGPB is strong enough to convince a reasonable jury that RGPB, a federally insured institution, took part in the "integrated transaction" and was injured by defendants, even if defendants intended to defraud another party to the transaction, in this case, RGM.  See Edelkind, 467 F.3d at 797-98.) Thus, defendants' motion to dismiss the counts related to RGM is **DENIED**.

    **D.**    **Doral Bank and Doral Mortgage**

Lastly, defendants claim that count 4 should be dismissed because Doral Mortgage, a federally uninsured institution, and not Doral Bank, a federally insured institution, issued the loans for the relevant property.  The government alleges that although "it is clear that Doral Mortgage handled most, if not all, of the loan process for defendant Llanos, both loans were issued by Doral Bank . . . ."  (Docket No. 454-1 at 29.)  Indeed, the evidence provided by the government indicates that Doral Mortgage acted as a "settlement agent" or broker for Doral Bank, which was the official lender of the loans.  Specifically, the government submits the following evidence:  (1) Initial Escrow Account Statement stating that the lender is Doral Bank and the settlement agent is Doral Mortgage; (2) First Payment Letter directing the borrower to send payment to Doral Bank; (3) Receipts and Disbursements Report from

Criminal No. 09-364 (FAB)                                              10

Doral Bank; (4) deed to the property stating that the lender is Doral Bank; (5) promissory note stating that the borrower promises to pay Doral Bank for the issued loan; and (6) checks issued to the borrower from Doral Bank.  (Docket No. 454-1 at 29-30.)  The Court finds that the evidence suggests that Doral Mortgage acted simply as a broker between the borrower defendant and Doral Bank, the actual lender for the loans at issue.  See Brandon, 17 F.3d at 426-27 (finding that the bank fraud statute applied to defendants who interposed an intermediary "between their fraud and the federally insured bank" because the federally insured institution "was in fact victimized by defendants' scheme to defraud.")  Thus, defendants' motion to dismiss the counts related to Doral Mortgage is **DENIED**.

### III. Failure to State an Offense

Defendants next assert that the indictment fails to state an offense and provide seven pages of largely unintelligible discourse about "rebates" and "simulated sales" that confound the issue.  At the heart of defendants' long-winded argument is the allegation that McCloskey did not possess the requisite knowledge that he was committing fraud, because he had simply failed to disclose to the lending institution that he had provided "rebates" or "donations" to purchasers of the properties at issue.  (Docket No. 417 at 18-

Criminal No. 09-364 (FAB)                                                11

24.)  In other words, defendants appear to argue that because McCloskey was simply providing a rebate or donation to the buyer as an incentive to complete the sale, the non-disclosure of this transaction to the lending institution does not constitute fraud under section 1344 because the scienter requirement is not met.  Id.

The Court disagrees.  While defendants cite to a slew of cases from the Supreme Court of Puerto Rico regarding local law governing "simulated transactions", (Docket No. 417 at 20-21), these cases have no bearing on whether defendants' actions violated section 1344.  In fact, the First Circuit Court of Appeals has affirmed bank fraud charges under section 1344 against an individual who was convicted of knowingly executing a scheme to defraud a federal institution where he failed to disclose that he stood to profit from a loan arrangement.  United States v. Moran, 312 F.3d 480, 488-492 (1st Cir. 2002) (finding that "there was sufficient evidence to allow a rational jury to conclude, beyond a reasonable doubt, that [defendant] concealed his financial arrangements with [real-estate developers] not as the product of a good faith, honest oversight but rather pursuant to an affirmative endeavor calculated to defraud [a federally insured institution].")  At this state of the proceedings, the Court finds that the

Criminal No. 09-364 (FAB)                                                    12

indictment sufficiently states a legal offense that should be taken to the jury.  Thus, defendants' motion to dismiss the indictment based on a failure to state an offense is **DENIED.**

**CONCLUSION**

For the reasons discussed above, defendants' motion to dismiss is **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 10, 2011.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        United States District Judge